This contract case is before the court under the Wunder-lich Act, 41 USC §§ 321-322 (1976). Each party has sought summary judgment. For the reasons discussed below, we hold for defendant.
The plaintiff, Goodrich Engineering, contracted with the Government to lay dockside crane rails at the Portsmouth Naval Shipyard, Portsmouth, New Hampshire. Placement of the crane rails required that steel piles be driven 25 feet into the ground. The piles were to be located from permanent survey points (points 24 and 25), which consisted of brass bolts set in concrete, and from temporary survey points (including points 25-2, 25-3, and 23), which consisted of PK nails placed in the dock’s asphalt surface. Both the temporary and the permanent survey points were located by the Government prior to the contract.
The permanent survey points were to remain, and did remain, in place throughout the contract’s performance. The asphalt surface, including the PK nails at points 25-2, *710 25-3, and 23, was to be removed and was removed. Unfortunately, when these PK nails were replaced after removal, they were positioned incorrectly. As a result, the piles were driven in the wrong place. Upon discovery of the error, the Government and the contractor apparently agreed the contractor would bear the costs of relocating a building rather than redriving the piles. Subsequently, plaintiff became dissatisfied with this arrangement, concluding the Government was responsible for incorrect replacement of the PK nails and thus for the building’s relocation costs. Plaintiffs claim for the building’s relocation costs was decided adversely by the contracting officer and the Armed Services Board of Contract Appeals (Board) (80-2 BCA para. 14780). This suit followed.
Although plaintiff makes a number of arguments to support its claim, plaintiffs principal theory is grounded in Paragraph 64 of the contract’s General Provisions. Paragraph 64 provides:
64. LAYOUT OF WORK
The Contractor shall lay out his work from Government-established base lines and bench marks indicated on the drawings and shall be responsible for all measurements in connection therewith. The Contractor shall furnish, at his own expense, all stakes, templates, platforms, equipment, tools, and materials and labor as may be required in laying out any part of the work from the base lines and bench marks established by the Government. The Contractor will be held responsible for the execution of the work to such lines and grades as may be established or indicated by the Officer in Charge of Construction. It shall be the responsibility of the Contractor to maintain and preserve all stakes and other marks established by the Officer in Charge of Construction until authorized to remove them. If such marks are destroyed, by the Contractor or through his negligence, prior to their authorized removal, they may be replaced by the Officer in Charge of Construction at his discretion. The expense of replacement will be deducted from any amounts due or to become due the Contractor.
Plaintiffs theory is that temporary survey points 25-2, 25-3, and 23 (as represented by the PK nails) were part of the "base lines” Paragraph 64 requires the Government to establish.
*711 The Board, however, rejected this contention. Instead, the Board concluded that only permanent survey points 24 and 25 (which remained unchanged throughout) constituted the "base line” required by Paragraph 64. In reaching this conclusion, the Board relied on (1) the testimony of the contracting officer as to the parties’ understanding, (2) the Government’s statements at a preconstruction conference that responsibility to reestablish the PK nails would rest with plaintiff, (3) the contractor’s efforts, prior to removal of the PK nails, to take "tie-in measurements” so that the PK nails could be accurately replaced, (4) plaintiffs efforts, after the error was discovered, to relocate the PK nails, (5) statements and actions by plaintiffs officers, both after the error was discovered and after the building’s relocation was agreed to, that collection of relocation costs from plaintiff would not be disputed, and (6) that in the performance of the contract, the PK nails at 25-2, 25-3, and 23 would have to be relocated while the brass bolts set in concrete would not.
The plaintiff challenges the Board’s conclusion on a variety of grounds. For example, plaintiff challenges the credibility and qualifications of the contracting officer. Plaintiff also challenges whether plaintiffs officers ever actually agreed to bear the building’s relocation costs. Further, plaintiff contends that within the engineering community, a "base line” encompasses all points from which work will be laid out, even if some points must be destroyed during construction. Plaintiff also contends that the usual practice is to have the landowner (here the Government) place all survey points, for it is in the owner’s interest to ensure the construction occurs in the right place. Last, plaintiff places great importance on the fact that the Government undertook to help plaintiff relocate the PK nails after plaintiff was unable to do so.
These arguments, however, fail to convince us that the Board’s decision should be set aside. Under the Wunderlich Act, supra, ours is only a narrow review limited to circumstances where a Board’s decision was arbitrary, capricious, grossly erroneous, or unsupported by substantial evidence. Most of what plaintiff now argues might be appropriate if we were empowered to retry the case de novo *712 and draw inferences contrary to those of the Board. These arguments mistake our function, for we have no power to resift the evidence and make such contrary factual determinations. See generally Koppers Co. v. United States, 186 Ct. Cl. 142, 147-151, 405 F.2d 554, 556-559 (1968); Carlo Bianchi & Co. v. United States, 167 Ct. Cl. 364, 368 (1964), cert denied, 382 U.S. 841 (1965). At most, plaintiffs version of the relevant facts suggests only that the Board was required to choose between competing views of the parties’ intent when Paragraph 64 was included. There is ample evidence in this record from which the Board might have concluded that only permanent survey points 24 and 25 defined the base line the Government was to provide under Paragraph 64. Thus, the Board’s decision was supported by substantial evidence and we so hold. Plaintiffs other contentions have been considered and also found to be without merit.
it is therefore ordered that defendant’s cross-motion for summary judgment should be and is hereby granted. Plaintiffs motion for summary judgment should be and is hereby denied. The petition is dismissed.